IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SANDRA S. FORTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv52-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a

disability.  Her application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129,

131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties

have consented to the United States Magistrate Judge conducting all proceedings in this case

and ordering the entry of final judgment.  The case is now before the court for review

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

pursuant to 42 U.S.C. §§ 405 (g).  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner must be reversed and this case remanded with directions to award benefits.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

_____**A. Introduction.**  Plaintiff Sandra Forte ("Forte") was 38 years old at the time of the hearing before the ALJ. (R. 444-46). She has a high school education. (R. 23, 447). Her prior work experience includes work as a machine operator, tester, and cashier. (R. 23).

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Following the hearing, the ALJ concluded that Forte has severe impairments of degenerative disc disease and major depression. (R. 18). The ALJ concluded that the plaintiff was unable to perform her past relevant work, and, relying on the testimony of a vocational expert, concluded that there were jobs existing in significant numbers in the national economy that Forte could perform. (R. 24). Accordingly, the ALJ concluded that Forte was not disabled.

**B. Plaintiff's Claims.** As stated by the plaintiff, Forte presents two issues for the Court's review:

1.    The administrative law judge failed to adequately articulate his analysis of Ms. Forte's testimony and credibility, especially in light of Ms. Forte's fibromyalgia.

2.    The administrative law judge failed to provide any analysis of State agency opinion.

(Pl's Br. at 10, 14).

## IV. Discussion

Forte raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Forte's specific arguments because they are intertwined with broader errors of the ALJ, and the court concludes that this case is due to be remanded for an award of benefits.

The ALJ concluded that Forte suffers from severe impairments of degenerative disc disease and major depression. However, the medical evidence also demonstrates that Forte

suffers from fibromyalgia, carpel tunnel syndrome in both hands, chronic impingement syndrome of the right shoulder, bulging discs, ulcerative colitis, pain disorder with psychological factors, and chronic migraine headaches.

In 1986, Forte was diagnosed with ulcerative colitis. (R. 204). In 1998, she suffered a severe episode that necessitated her seeking treatment. (*Id*.)

On October 3, 2000, Forte sought treatment for back, hip and leg pain. (R. 192-93). Due to tender points on palpation, she was diagnosed with right sciatic notch pain. (*Id*.) An MRI revealed degenerative disc disease at L5-S1 with some minimal disc bulging and "decreased T2 signal in the lower two lumbar discs without any obvious herniation or stenosis." (R. 190, 192). Examination revealed decreased flexion and range of motion in the spine. Prior treatment with Vioxx, Lorcet and prednisone injections offered only temporary relief. (R. 190). On December 8, 2000, Forte called Dr. Bernard, her treating physician, to complain that neither the Vioxx nor the prednisone trigger point injections had been effective. (R. 189). Dr. Bernard increased the dosage of Vioxx. (*Id*.)

On December 11, 2000, Forte had "diffuse tenderness over the cervical paraspinal region and over the right flank," despite having a full range of motion. (R. 186). Her medication was changed from Vioxx to Zanaflex and Wygesic for pain. (*Id*.). She was also referred to physical therapy. (*Id*.) Forte continued to have diffuse tenderness over the lumbar region. (R. 183). Her prescription for Zanaflex was discontinued as it irritated her GI tract. (*Id*.). On February 16, 2001, Forte was much improved and continued to work

5

while wearing back support.  (R. 182).

Due to her chronic ulcerative colitis, on May 21, 2001, Forte underwent a colonoscopy with biopsy.  (R. 199-202).  There were minimal changes.  (R. 199).  She continued to follow up with her treating physician for this condition.  (R. 198).

On September 21, 2001, Forte returned to her treating physician complaining of pain in the back and left hip.  (R. 181).  She had previously been treated with Celebrex and Lorcet. She had decreased range of motion.  (*Id*.).  She was continued on her medication and referred to physical therapy.

On June 17, 2002, Forte was seen by Dr. Bernard for neck, back, and right shoulder pain.  (R. 176).  Two months earlier she was involved in a motor vehicle accident.  She was treated conservatively with pain medication but her pain had increased.  (*Id*.)  Her range of motion was decreased in her lumbar spine and a May 23, 2002, MRI revealed degenerative changes at C5-6.  (R. 177).  She was diagnosed with cervical and lumbar strain and continued on her medications.  (*Id*.)

On July 19, 2002, Forte had "diffuse tenderness over the paraspinal region."  (R. 174). She was prescribed Vioxx again for the cervical strain.  (*Id*.).  On September 20, 2002, Forte was prescribed Neurontin because the pain was preventing her from sleeping.  (R. 171).

On October 11, 2002, Forte was in another car accident.  (R. 170).  She returned to Dr. Bernard on October 18, 2002.  Prior to the accident, she had been going to physical therapy and was "about 50 percent improved."  (*Id*.).  An examination revealed a decreased

6

range of motion and diffuse tenderness over the sternum.  (*Id.*).  Her diagnosis was "cervical strain and lumbar strain superimposed on patient who has had a pre-existing symptomatic cervical spondylosis."  (*Id.*)  She was continued on Vioxx and the dosage of her Neurontin was doubled.  (*Id.*).  Because an increase in her pain necessitated a trip to the emergency room, Dr. Bernard suggested Forte undergo rheumatological testing. (R. 168).

On November 15, 2002, Dr. Bernard noted that Forte's Rheumatoid factor was elevated and that her family history was positive for Lupus.  (R. 166).  Her range of motion was also decreased.  (*Id.*)  He recommended repeating the rheumatoid testing and obtaining an updated MRI.  (*Id.*).  On December 20, 2002, Forte presented to Dr. Bernard complaining of "neck pain, right arm pain, back pain, left hip pain, and pain over the costochondral region on the left side at about the T-4-T5 region."  (R. 165).  An MRI revealed a bulge in a disc at the cervical spine as well as the lumbosacral junction.  (*Id.*)  Her rheumatological profile was abnormal.  (*Id.*)

On March 6, 2003, Forte was diagnosed with lumbar spondylosis, inflammatory bowel disease and scaroiliitis.  (R. 161).

> Sandra Forte was in today for followup.  She has undergone further workup by Doctor Vivas.  She has had x-rays and bone scan, which showed some uptake in the left SI joint region.  There were some concerns about osteitis condensans ilii.
>
> Given her symptoms and somewhat multiple somatic complaints about her neck and back, I am beginning to think an inflammatory etiology is probably the right diagnosis.  She has an abnormal disc on MRI.  We have contemplated discography.  She may have two problems.  One problem is inflammatory condition and second is a symptomatic lumbar disc.

(R. 161).  She was prescribed a TENS unit as Dr. Vivas had previously prescribed Elavil.
(*Id*.).

On April 17, 2003, Forte presented to Dr. Bernard complaining of neck and back pain.
Her range of motion in her lumbar spine was decreased but she had full range of motion in
her cervical spine.  A small bulging disc was noted at C5-6.  Dr. Bernard renewed her Vioxx
and Neurontin prescriptions as well as her TENS unit.  He did not recommend surgical
intervention.  (R. 160).

On June 10, 2003, Forte underwent a colonoscopy as a follow-up for her ulcerative
colitis.  (R. 148-49).  At that time, the disease was active and worsening.  (*Id*.)

On September 5, 2003, Dr. Bernard referred Forte to a pain clinic.  (R. 158).  On
January 22, 2004, Dr. Bernard noted that she was "a cogwheel type algidity (sic) in the
shoulders."  (R. 157).  A MRI on January 22, 2004, indicated "[m]ild early cervical
spondylosis at the level of C5-6 with mild posterior bulge impinging upon the thecal sac but
not upon the cervical spinal cord.  There is some mild early left-sided neural foraminal
narrowing at this level." (R. 194).  Because the MRI revealed minimal findings, and Forte
continued to experience neck pain and weakness, Dr. Bernard recommended a referral to a
rheumatologist or neurologist.  (R. 156).  He also prescribed a Medrol dosepak.  (*Id*.).

On February 25, 2004, Forte was seen by internist Dr. Roman.  (R. 250-53).  She
complained of chest pain, ulcerative colitis, extensive abdominal pain, neck and shoulder
pain, with pain radiating to the arms.  (R. 258).

On March 16, 2004, rheumatologist Dr. In Young Soh informed Dr. Roman that he was treating Forte for fibromyalgia syndrome using Elavil. (R. 152). He also suggested that Forte follow up with an orthopedic surgeon and physical therapy. (*Id*.)

Forte saw Dr. Bernard on June 4, 2004. At that time, she was taking Topamax, Bextra, Desyrel and Baclofen. Although she had "almost" a full range of motion in her neck, she had pain in her right shoulder. (R. 153).

On July 7, 2004, Forte underwent a psychological evaluation by licensed psychologist J. Walter Jacobs. (R. 217-19). During the examination, Forte was in obvious discomfort. (R. 217). Dr. Jacob opined that Forte was suffering from "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, Major Depression, Recurrent, Moderate, [and] Anxiety Disorder NOS." (R. 218-19). She was also suffering from Low Back Syndrome, Neck Pain and Ulcerative Colitis. (R. 219). Dr. Jacobs opined that Forte's medications of trazodone and amitriptyline were below therapeutic levels necessary to treat her depression. (*Id*.)

Forte continued to be treated for pain at the Southeast Pain Management Center.[4] (R. 221-24).

On August 3, 2004, Forte underwent surgery for chronic impingement syndrome and rotator cuff surgery. (R. 209-15). An MRI confirmed a tear in her tendon. (R. 209, 354). Forte immediately began rehabilitative therapy. (R. 334-38, 339-56).

---

[4] According to Forte, she had been treated at the Pain Management Clinic since October 2002. (R. 217). She was not a candidate for surgery because surgery "would likely worsen" her condition. (*Id*.).

On September 28, 2004, Forte participated in psychotherapy to help distract her from her preoccupation with pain.  (R. 216).

On September 29, 2004, the physical therapist noted that Forte might be experiencing early symptoms of RSD/shoulder hand syndrome.  (R. 333).  On October 6, 2004, Dr. Lolley added cervical traction to her physical therapy, noting that Forte was "very emotional and depressed" during therapy.  (R. 331).  Forte continued with physical therapy.  (R. 323-30).

On November 15, 2004, after positive Tinel tests, Dr. Roman diagnosed Forte as suffering from bilateral carpel tunnel syndrome.  (R. 240-41).  Dr. Roman next saw Forte on December 5, 2004. (R. 227-35).  At that time, Forte had "palpation focal tenderness" over her trapezius.  Nerve conduction tests also confirmed carpel tunnel syndrome.  (R. 228, 266).

On December 20, 2004, Forte was referred to the University of Alabama Rheumatology Clinic for an evaluation of her diffuse pain and previously diagnosed fibromyalgia.  (R. 398-407).

> [T]he patient was diagnosed with fibromyalgia by Dr. Soh in Dothan.  The patient was provided Elavil and neck MRI revealed minimal cervial (sic) spondylosis was noted.  Orthopedic evaluation of physical therapy was recommended.  The patient states she has been seen at the Southeast Pain Management Center for several months, undergoing epidural and selective nerve root blocks.  She notes that these provide transient relief (approximately one to two weeks).  Based on the records she provides this visit, her most recent evaluation there was 10/08/04.  She notes her Elavil has recently been changed to Cymbalta last week.  The patient reports diffuse pain in bilateral arms, legs, hands, buttocks, back.  She notes some episodes of dizziness and lightheadedness.  I asked her if she has discussed with her primary care physician and she states that she had.  The patient reports she was provided what sounds like a Holter monitor last month and no significant abnormalities were identified.  The patient also notes carpal tunnel was diagnosed.  She

10

cannot assess that she has prolonged morning stiffness, stating she hurts and feels stiff around the clock.  She believes she has had some swelling in the bilateral MCP joints and around the bilateral IP joints.  She is not sleeping well despite increasing doses of trazodone.  She is not participating in any aerobic exercise at this time.  She is also using Darvocet and Lortab provided by her primary care physician.  Throughout the encounter, she had episodes of tearfulness and notes frustration over her condition.  She notes some stress over discussing her condition with her children.  Her mother reports weight loss over the past several months (approximately 15 pounds over the past six months). . . .

(R. 398).

Diffuse tender points were noted at the bilateral lower and upper extremities.  (R. 399).  Dr. Turkiewicz confirmed Forte's diagnosis of fibromyalgia based on "non-restorative sleep, diffuse myalgias, and associated conditions (carpal tunnel syndrome)."  (R. 399).

Forte was discharged from rehabilitative therapy on December 22, 2004, having reached an "[a]cceptable level of therapeutical goals attained with some unresolved impairment that is not amendable to physical therapy."  (R. 322).

On January 10, 2005, Forte returned to Dr. Turkiewicz for a follow-up evaluation of her diffuse pain.  (R. 394-97).  Her blood work "revealed mildly positive rheumatoid factor, . . . but negative anti-CCP antibody."  (R. 394).  A review of x-rays indicated mild joint space narrowing, bilaterally in the hands.  (R. 395).  Dr. Turkiewicz's assessments included: microscopic hematuria, fibromyalgia, positive rheumatoid factor, ulcerative colitis and narcotic use (from her treating primary physician).  (*Id*.)  Dr. Turkiewicz referred Forte to physical therapy.  (R. 321).

On January 24, 2005, Forte presented for physical therapy.  (R. 318-20).  She had

11

decreased cervical mobility, decreased range of motion in her spine, muscle spasms and "multiple trigger points noted bilateral upper traps, levator scap, rhomboids, and suboccipital muscles." (R. 319). On January 26, 2005, Forte was extremely sensitive to touch with multiple trigger points noted. (R. 317). On January 27, 2005, Forte's trigger points and inflammation had decreased but she still had muscle spasms and was tender to palpation. (R. 316). On February 1, 2005, the physical therapist noted improvement on the trigger points but tightness and tenderness remained. (R. 315).

Forte was seen by Dr. Turkiewicz on February 3, 2005. (R. 392-93). Dr. Turkiewicz recommended continued physical therapy for fibromyalgia to manage her tender points and improve her range of motion. (R. 393). He also recommended continuing on Effexor and trazodone while discontinuing Cymbalta and Elavil. (*Id*.). Forte continued with physical therapy with some improvement. (R. 300-13).

On December 20, 2005, Forte complained to Dr. Turkiewicz of migraine headaches and diffuse pain. (R. 363-64).

> Her regimen currently includes Cymbalta and trazodone, although she reports she ran out of Cymbalta earlier this week. She has also been provided Imitrex for migraines, although she reports continued problems with chronic and throbbing headaches in the frontal and occipital lobes. She has problems with chronic neck and shoulder pain, which is exacerbated by her migraines. She has had no joint swelling in the interim. She is no longer on Effexor of Flexeril. She sees a local psychologist and gets Cymbalta from that office. She is not participating in any aquatic or physical exercise at this juncture. She notes diffuse myalgias without change. Otherwise, no new complaints.

(R. 363).

Dr. Turkiewicz again confirmed the diagnosis of fibromyalgia with her "most dominant symptom appear[ing] to be her chronic and progressive migraine headaches." (R. 364). Dr. Turkiewicz also recommended a neurological evaluation of her migraine headaches and a return to physical therapy. (*Id*.).

On January 3, 2006, the physical therapist noted "[a]ctive trigger points . . . throughout upper back and neck." (R. 379). On January 6, 2006, Forte tolerated physical therapy, although she was "very tender upon palpation in bilateral c-spine and B upper trapezius muscles." (R. 371). On January 18, 2006, Forte complained to the therapist of increased headaches, pain bilaterally in upper trapezius and cervical areas, and radicular pain bilaterally down her back. (R. 369). In February 2006, Forte was still experiencing pain during physical therapy. (R. 368).

Forte underwent a neurological evaluation by Dr. Sidhpura on March 9, 2006. (R. 422-23). Although the neurological examination was "essentially normal," Dr. Sidhpura recommended a MRI of the brain and increased her Topamax prescription. (R. 423). The MRI revealed a "5.0 mm nonspecific lesion at the base of the brain on the right side anterior to the anterior commissure of uncertain significance and of uncertain etiology." (R. 421).

On March 17, 2006, Forte was treated with trigger point injections by Dr. Roman. (R. 417-18).

On April 18, 2006, Forte was seen by Dr. Sidhpura. He reviewed the MRI of Forte's brain and concluded that the 5 mm lesion at the base of her brain was not the cause of her

13

headaches.  (R. 420).  However, Dr. Sidhpura diagnosed Forte with "[m]ixed type headaches, some vascular component, uncontrolled."  (*Id*.).  He increased her Topamax dosage.  (*Id*.).

On April 25, 2006, Forte received another trigger point injection from Dr. Roman. (R. 412-13).  On May 23, 2006, Dr. Roman treated Forte's migraines and fibromyalgia by injecting her with Toradol.  (R. 410-11).  On June 20, 2006, Dr. Roman prescribed Cymbalta, Flexeril, Topamax and Vicodin to treat Forte's pain.  (R. 409).

On July 6, 2006, Forte was seen by Dr. Turkiewicz for a follow up.  (R. 381-91).  She reported continued migraine headaches, diffuse pain, stress, anxiety, pain in her hands, and chest pain.  (R. 381).  No change was noted in her diffuse bilateral lower and upper extremities' tender points.  (R. 382).  Dr. Turkiewicz noted that Forte's fibromyalgia continued with "recurrent symptoms including migraine, reported ulcerative colitis, stress anxiety."  (*Id*.).  X-rays revealed "increased density on the iliac sides of the SI joints suggesting osteitis condensans," (R. 385), and "mild narrowing of the intervertebral disc spaces consistent with degenerative disc disease."  (R. 386).  Osteoarthritis of the right hip was also noted.  (*Id*.)

On July 25, 2006, Dr. Sidhpura increased Forte's dosage of Topamax as her chronic mixed headaches were only "moderately controlled."  (R. 419).

On December 19, 2006, Forte was evaluated by Dr. Serrato at the Columbus Pain Center.  (R. 434-39).  She had "generalized tenderness of fibromyalgia with no point tenderness or spasm."  (R. 435).

X-rays on January 16, 2007, revealed "mild disk space between C5 and C6 with minimal osteophytes anterior to these bodies." (R. 443). "Reversal of the normal lordotic curve of the cervical spine" was also noted, possibly due to "muscle spasm or positioning." (*Id.*). On February 7, 2007, Dr. Serrato prescribed Felden and Vicodin for Forte's neck pain. (R. 433). On March 6, 2007, Dr. Serrato increased Forte's medications due to her increased pain. (R. 432). On March 15, 2007, Dr. Serrato treated Forte with an epidural injection. (R. 441). On April 18, 2007, Dr. Serrato increased Forte's dosage of Vicodin. (R. 431). On May 30, 2007, Forte underwent another epidural injection. (R. 440). An MRI on May 30, 2007 revealed "minimal cesiccation of the disc" at L1-2, L2-3, and L3-4. (R. 442). The MRI also indicated central disc protrusion at L4-5 and "moderate cesiccation of the disc" and disc protrusion at L5-S1. (*Id.*).

Despite the medical evidence that clearly demonstrates that Forte suffers from fibromyalgia, carpel tunnel syndrome, chronic impingement syndrome of the right shoulder, cervical and lumbar spondylosis, chronic ulcerative colitis, pain disorder with psychological factors, anxiety, and chronic migraine headaches, inexplicably, the ALJ did not find that any of these medical conditions constituted "severe" impairments. In fact, he made no findings at all about these impairments.

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which

would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing [her] impairment is 'severe' within the meaning of the Act." *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

Because the ALJ did not making any findings regarding the plaintiff's fibromyalgia, carpel tunnel syndrome, chronic impingement syndrome of the right shoulder, cervical and lumbar spondylosis, chronic ulcerative colitis, pain disorder with psychological factors, anxiety, and chronic migraine headaches, the ALJ did not pursue the sequential evaluation beyond step 2 of the analysis. The ALJ's rote recitation of the medical evidence is simply insufficient as a matter of law to meet his burden at this step. Consequently, the court concludes that the ALJ erred as a matter of law at step two of the sequential analysis when he failed to consider whether Forte's fibromyalgia, carpel tunnel syndrome, chronic impingement syndrome of the right shoulder, cervical and lumbar spondylosis, chronic ulcerative colitis, pain disorder with psychological factors, anxiety, and chronic migraine

16

headaches, constitute severe impairments.

The ALJ then compounded his errors by failing to properly consider Forte's subjective complaints of pain.  Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is <u>itself</u> sufficient to sustain a finding of disability."  *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Landry,* 782 F. 2d at 1553.

In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and one of the two *Landry* tests.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health*

& *Human Servs.*, 941 D.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"  *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true.  This rule of law is well-established in this circuit.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991)*; Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).

Forte testified during the hearing that she stopped working due to migraine headaches, nausea, fatigue, chronic pain, ulcerative colitis, stomach cramps, pain, numbness and tingling in her right shoulder and arm, fibromyalgia, and carpal tunnel in both hands.  (R. 450-52).  She testified that she has "real bad" pain at tender points that start at the top of her skull and go down her back and hips to her knees.  (R. 454-55).  She further testified that she has migraine headaches two to three times a week that are treated by epidural injection.  (R. 456).

The ALJ acknowledged that Forte has impairments that would reasonably be expected to produce the type of pain about which she complains but he concluded that her testimony

was "not entirely credible." (R. 19). In discrediting Forte's testimony, the court replicates

the ALJ's credibility determination in its entirety.

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(R. 19).

The ALJ wholly failed to articulate any reason for discounting the plaintiff's

credibility and her pain testimony.[5]  Thus, as a matter of law, her pain testimony must be

---

[5]  The ALJ's reliance on evidence from Covenant Rehabilitation regarding Forte's physical therapy can be construed as an attempt to discredit her pain testimony and credibility. The ALJ relied on early records that indicate

> early in the claimant's therapy that although she reported her pain to be a 9 out of 10, she appeared to be tolerating post-operative discomfort well. Throughout her therapy her symptoms continued to improve, including an a (sic) great increase in range of motion and decrease in pain. On September 8, 2004, she was walking well and a week later her joint tightness was minimal. In February 2005 her trigger points in the bilateral upper extremities were less tender following treatment, and she had decreased arm pain. In April 2005 there was significant decrease in c-spine musculature tension. In May 2005, she was doing much better and had no radicular pain on the upper extremities. She continued with therapy through at least February 21, 2006 with decrease in pain and increase in strength.

(R. 22).

The ALJ, however, fails to consider other evidence from Covenant Rehabilitation that suggests that Forte's condition was deteriorating. When Forte was discharged from rehabilitative therapy on December 22, 2004, she had reached an "[a]cceptable level of therapeutical goals attained with *some unresolved impairment that is not amendable to physical therapy*." (R. 322) (emphasis added). When she resumed physical therapy in January 2005, she had decreased cervical mobility, decreased range of motion in her spine, muscle spasms and "multiple trigger points noted bilateral upper traps, levator scap, rhomboids, and suboccipital muscles." (R. 319). On January 26, 2005, she was extremely sensitive to touch with multiple trigger points noted. (R. 317). On January 27, 2005, while Forte's trigger points and inflammation had decreased, she still had muscle spasms and was tender to palpation. (R. 316). On February 1, 2005, the physical therapist noted improvement on the trigger points but tightness and tenderness remained. (R. 315).

On January 3, 2006, the physical therapist noted "[a]ctive trigger points . . . throughout upper back and neck." (R. 379). A January 6, 2006 treatment note indicates that Forte tolerated physical therapy, but

accepted as true.

The vocational expert in this case testified that if the plaintiff's pain testimony is accepted as true, she is disabled.

> Q:     Mr. Murphy, if the Judge found that the Claimant's testimony was deemed to be credible and supported by the evidence contained in her file, would a so-described person be able to do her past relevant work or any other work in the national economy?
>
> A:     No, ma'am.  I believe, by her testimony today, she would not be capable of sustaining work activity.
>
> Q:     Okay.  Now in reviewing the file, did you get a chance to review the exhibits from the physical therapist where they did pain assessment ratings?  That is –
>
> A:     Yes, ma'am.
>
> Q:     – seemed that their pain ratings went from no lower than five up to a eight on average.  If an individual had those consistent type pain

---

she was "very tender upon palpation in bilateral c-spine and B upper trapezius muscles." (R. 371).  She had active trigger points "throughout upper back and neck," and she had a "decrease in functional status. (R. 373).  Her problems included "[f]lexibility restricting normal movement patterns," "[d]ecreased postural strength and awareness," and "[d]ecreased ROM preventing full functional activity." (*Id.*).  A January 18, 2006, treatment note indicated that Forte had radicular pain. (R. 369).  On February 21, 2006, the physical therapist noted that Forte was "very sensitive," and one goal was to "[d]ecrease active trigger points" by more than 50%. (R. 368).

The court has an obligation to scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision.  *See Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-841 (11th Cir. 1992).

While the ALJ is entitled to make reasonable evidentiary conclusions, the ALJ does not explain why he chose to ignore salient portions of the records from Covenant Rehabilitation, particularly when that evidence reflects favorably on the plaintiff's credibility.  It appears that the ALJ culled the record for selective references, ignoring comments that did not support his conclusions.  This he cannot do.  Thus, to the extent that his recitation of the medical records from Covenant Rehabilitation can be considered an attempt to discredit the plaintiff's credibility and pain testimony, the court concludes that the ALJ's determination is not supported by substantial evidence.

ratings, would a so-described person be able to do any work available in the national economy on a sustained basis?

A:      I'd have to say pain that ranges from a five to an eight would be in the moderately severe to severe range and I'd have to say that that individual could not sustain work activity due to distraction and possibly even the effects of medication.

(R. 461-62).

Because the medical evidence supports Forte's pain testimony, and that testimony has as a matter of law been accepted as true by the Commissioner, the court concludes that Forte is disabled and entitled to an award of benefits. *Hale*, 831 F.2d at 1012. *See also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) (failure to apply the correct legal standards is grounds for reversal and an award of benefits).

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner with directions for an award of benefits.

A separate order will be entered.

Done this 6th day of March, 2009.


            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

21